744 A.2d 1246 (1999)
328 N.J. Super. 166
I.J., Plaintiff,
v.
I.S., Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Camden County.
Decided November 3, 1999.
*1247 Plaintiff, I.J., appeared pro se.
Defendant, I.S., appeared pro se.
*1248 DiCAMILLO, J.T.C., Temporarily Assigned.
Plaintiff seeks to dismiss her final restraining order entered under the Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 to -33(Act). An examination is made in this action whether plaintiff must establish a N.J.S.A. 2C:25-29d "good cause" basis to dismiss her final restraining order (FRO) and whether the dismissal request must be heard by the judge who granted the FRO. A reported trial decision requires plaintiff to satisfy the N.J.S.A. 2C:25-29d "good cause" requirement prior to dismissing the restraining order. Stevenson v. Stevenson, 314 N.J.Super. 350, 714 A.2d 986 (Ch.Div. 1998). N.J.S.A. 2C:25-29d and the Domestic Violence Procedures Manual (Manual) requires the same judge to determine whether a restraining order should be dismissed, unless the judge has a "complete record" of the hearing on which the restraining order was based. What then is a "complete record?"
The original action was instituted on October 21, 1998 when plaintiff filed a complaint for a domestic violence restraining order at the Camden City Police Department. The pertinent portion of the complaint states that
[o]n 10/19/98 at about 11:00 A.M. defendant went to victim's house and damaged victim's car (1990 Dodge Dynasty) and then as victim came outside the defendant punched victim in her face and kicked her a number of times in her face. On 10/19/98 above defendant called and left threatening messages on victim's answering machine and on 10/21/98 above defendant broke her front window and then called her and threatened to kill her which constitutes the criminal offense of Terroristic Threats.
Any prior history of domestic violence? [] no [×] yes: about two weeks ago defendant punched the victim in her face.
A city police officer telephoned a municipal court judge who issued an ex parte temporary restraining order(TRO). R. 5:7A. On October 29, 1998, the plaintiff appeared in Family Court, where in addition to the complaint, she provided the following information in the form of an affidavit.
I.S. had been making threatening calls and unwelcome visits to my house for over a month. Mostly to my boyfriend, trying to start trouble. The last few visits has become [sic] very violent. He has kicked in my door and broken my windows on more than one day. And on the 19th he called me and tricked me into coming out of my home at this time he was hiding behind a tree and he snuck up behind me and began beating me. I did nothing to prevent or prolong this. Because my boyfriend was inside and I tried to walk away hoping my boyfriend would not come out and then have even a bigger problem. As I tried to go in the house Ivan then pulled me down the steps and punched me in my face (I fell to the ground) then he began kicking me in my head and face, back and stomach attempting to cause me to miscarry my unborn child.
Judge Rand conducted the trial, and after hearing testimony from the plaintiff and the defendant, issued a final restraining order. Plaintiff now returns one year later to dismiss the FRO. As required by the Manual, p.58, ¶ C(1)(d), plaintiff submitted a second affidavit providing reasons why the restraining order should be dismissed.
I would like to see this drop [sic], as my daughter's father has been jailed through no fault of his own. I have been under the belief that my restraining order was expired after one year. Thinking this was the case I has [sic] asked & allowed to participate in his daughter's life more. He's been working and paying child support. He's been trying to get his life together. So I permitted him to come over any time, as long as he didn't cause trouble. I was *1249 trying to be supportive and I gave him the wrong information about the restraining order. Now he is in jail and I feel very bad about it. He's on probation for five yrs. And I would like to get this matter straight so that he can go home and continue working and doing the rite [sic] thing. Thank You.
This court conducted a "dismissal hearing" in which the plaintiff testified that she called the police because her house was burglarized. As part of the investigation, the police discovered an active restraining order that the plaintiff had against the defendant. The defendant was arrested despite plaintiff's plea that she presently had a good relationship with the defendant, that he had her permission since October 21, 1999 to be at plaintiff's home, and that she thought the restraining order expired a year after the TRO was entered. The police must arrest if there is probable cause that a restraining order was violated. N.J.S.A. 2C:25-21a(3). Knowledge of a restraining order and observation of the contact between the parties gave the police probable cause for the arrest. The Manual, though, requires the police to contact a judge to set bail. Manual, p.67, ¶ A(1)(b)(1). Based on the information provided by the plaintiff, a judge could have released the defendant on his own recognizance. This would have avoided the defendant spending eight days in jail on a charge the prosecutor dismissed the day the matter was first scheduled in court.
Prior to plaintiff's appearance for the "dismissal hearing," she met with a member of the domestic violence unit. They discussed whether the application to dismiss was voluntary and without coercion. The plaintiff was also educated as to the "cycle of violence"[1] and the consequences of a dismissed restraining order. Manual, p.58, ¶ C(1)(d). The court had the same discussion with the plaintiff who provided creditable testimony that she understood the nature of the "cycle of violence" and what happens when a restraining order is dismissed[2] and the request to dismiss was voluntary and without coercion. The plaintiff said that this is what she wanted, that she no longer feared the defendant and that since the restraining order was granted the defendant was not a problem. Plaintiff also maintained that since she invited the defendant back into her home he had acted as a good father to their daughter.

(I)
The Prevention of Domestic Violence Act was enacted to speak to an ever-increasing problem of violence in the domestic setting. The Act was drafted with the intent to communicate the attitude that violent behavior will not be tolerated or excused. Both criminal laws and civil remedies provide necessary protection for victims. N.J.S.A. 2C:25-18. To further that intent, the Act provides a mechanism to file a domestic violence complaint in order to obtain an ex-parte restraining order 24 hours a day, seven days a week. Within ten days of a temporary restraining order's issuance, a hearing is scheduled to determine whether the temporary order should be made permanent. N.J.S.A. 2C:25-29a. If the victim seeks to withdraw his or her complaint and dismiss the TRO, the victim must be counseled by a member of the domestic violence unit as to the "cycle of violence" and the consequences of a dismissal. Manual, p.57-58, *1250 ¶ C(1)(c). After the counseling, if the victim desires to dismiss the TRO, a judge should reiterate the points previously covered by the domestic violence unit and make a determination whether the request to dismiss is voluntary and without coercion. Id. at 58-59.
According to the Manual, in order to dismiss a TRO, a plaintiff has no affirmative duty to meet the N.J.S.A. 2C:25-29d "good cause" requirement. Plaintiff must understand the "cycle of violence," the consequences of the dismissal, and the request to dismiss must be voluntary and without coercion. If the plaintiff makes no application to dismiss the restraining order and the plaintiff is awarded a final restraining order, the order is effective indefinitely, unless the court modifies or dismisses the restraining order at the plaintiff or the defendant's request.
There is only one provision in the Act that refers to dismissing a restraining order. N.J.S.A. 2C:25-29d.
Upon good cause (emphasis added) shown, any final order may be dissolved or modified upon application to the Family Part of the Chancery Division of the Superior Court, but only if the judge who dissolves or modifies the order is the same judge who entered the order, or has available a complete record of the hearing or hearings on which the order was based.
The question is whether the provision applies to both the plaintiff and defendant or just to the defendant. There is only one Appellate Division case that applied the N.J.S.A. 2C:25-29d "good cause" requirement to a defendant seeking to dismiss a final restraining order. Kanaszka v. Kunen, 313 N.J.Super. 600, 713 A.2d 565 (App.Div.1998). The defendant in Kanaszka desired a career in law enforcement and considered the FRO an obstacle to such employment. Judge Fall, on behalf of a three-judge panel, reasoned that defendant's burden required a showing of a "substantial change of circumstances" in order to justify a dismissal. Id. at 609, 713 A.2d 565. Kanaszka also held that a list of eleven factors developed by Judge Dilts should be considered. Carfagno v. Carfagno, 288 N.J.Super. 424, 672 A.2d 751 (Ch. Div.1995). Further, the extent and history of abuse, as well as the reasonableness of the victim's continued fear of the abuser, should be considered. Id. at 608, 713 A.2d 565. In this regard, prior to a determination of whether the dismissal of the restraining order is appropriate, the defendant must produce the transcript from the final restraining order hearing. Id. at 607, 713 A.2d 565. This is true whether or not the judge who heard the FRO is the judge who is hearing the application for the dismissal.
Kanaszka addressed only the defendant's application to dismiss a restraining order. The court was silent as to a plaintiff's application to dismiss. The only reported decision to address this question is Stevenson. It based its determination on the Act's public policy to provide a victim with the maximum protection from abuse. Id. at 361, 714 A.2d 986. The "good cause" requirement permits a judge to determine whether an objective fear exists for the plaintiff before dismissing a final order. Id. at 363-364, 714 A.2d 986. There, though, is contrary authority that the "good cause" requirement does not apply to a plaintiff seeking to dismiss his or her restraining order.
The New Jersey Supreme Court and the Attorney General of New Jersey issued the Domestic Violence Procedures Manual which developed court and police procedures for handling domestic violence matters. A compilation of efforts of New Jersey's highest court and the highest state law enforcement agency should have particular force in the interpretation of the Act.
A request for dismissal of a final order should be handled similarly to a request or withdrawal of a complaint. The dismissal must be requested in person, and ultimately before the judge who entered the order, or a judge who has available a *1251 complete record of the hearing or hearings on which the order was based, after the victim has been counseled concerning his/her rights and the ramification of a dismissal.

Manual, p.59, ¶ C(2)(a).
The Manual sets a specific procedure to be followed when the plaintiff seeks to dismiss his or her restraining order.
The judge, after reviewing the file, and the accompanying form/affidavit, should reiterate to the victim the information given to the victim by the domestic violence staff person. If the judge thereafter is convinced that the request for withdrawal is an informed one and is not made under duress, the withdrawal should be granted, unless the gravity of the alleged violence makes an appearance before the judge by the defendant appropriate ...

Manual, p.58, ¶ C(1)(e).
Similar to the dismissal of a TRO, the dismissal of an FRO requires the plaintiff to understand the "cycle of violence," consequences of the dismissal and the request to dismiss is voluntary and without coercion. The Supreme Court and the Attorney General do not require the plaintiff to meet any "good cause" requirement to dismiss a restraining order.
Recent change in the Act formulates another basis why a plaintiff does not have to meet the N.J.S.A. 2C:25-29d "good cause" requirement. These amendments create a new burden on a defendant seeking to dismiss an FRO. Effective October 13, 1999, the amendments to the Act require a defendant, who was ordered to attend professional counseling, to complete the counseling prior to making application to dismiss a restraining order.
N.J.S.A. 2C:25-27, which deals with sentencing domestic violence offenders, now contains the following language.
In any case where the court order contains a requirement that the defendant receive professional counseling, no application by the defendant to dissolve the restraining order shall be granted unless, in addition to any other provisions required by law or conditions ordered by the court, the defendant has completed all required attendance at such counseling.
Also N.J.S.A. 2C:24-29b(5), which sets out the available relief for domestic violence restraining orders, contains the following language.
No application by the defendant to dissolve a final order which contains a requirement of attendance at professional counseling pursuant to this paragraph shall be granted by the court unless, in addition to any other provisions required by law or conditions ordered by the court, the defendant has completed all required attendance at such counseling.
Both amendments are silent as to any restrictions on the plaintiff seeking to dismiss a final restraining order. The amendments speak only to the defendant. The Legislature's failure to include a specific person, is in itself a significant indication of the Legislative intent. Ngiraingas v. Sanchez, 495 U.S. 182, 189, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990). The contention adheres to a theory of cohesive legislative policy where statutory amendments are read in light of the overall policy behind the legislation. The underlying public policy gives victims the maximum protection from further abuse that the law allows by ordering specific remedies and sanctions against the abuser. Stevenson, Id. at 361, 714 A.2d 986. The plaintiff's actions have not given rise to these remedies and the plaintiff's voluntary decisions are in need of careful scrutiny. When the abuser seeks to dismiss a court's restraints, the Act mandates that the victim be assured protection from further violence before her own FRO is vacated at an abuser's request. If the New Jersey Legislature intended to place restrictions on a plaintiff's ability to dismiss an FRO, it would have used more inclusive terminology in the amendments. Where legislative intent does not expressly authorize an action, *1252 the Legislature neither intended to create such a cause of action by silence, nor desired the judiciary to create one by implication. Campione v. Adamar of New Jersey, Inc., 302 N.J.Super. 99, 111, 694 A.2d 1045 (App.Div.1997). The New Jersey Legislature restricted a defendant's ability to dismiss a restraining order, but provided no similar restraints on a plaintiff's ability to dismiss. Given the overall policy of the Act to prevent and cease abusers' violent behavior, there is no implied prohibition to plaintiff's dismissal request.
Principles underlying the distinction between criminal and civil actions formulate one final basis that N.J.S.A. 2C:25-29d "good cause" requirement applies only to a defendant seeking dismissal a final order. Criminal matters are based upon a state's interest in protecting its citizens from behavior that would do harm to persons and their property. The state creates criminal laws that when violated would subject the violator to sanctions. A civil action is the attempt by one private party to seek relief from another private party. This relief is sought pursuant to common and statutory laws. The state's involvement in civil actions is usually limited to the creation of procedures and remedies. The State normally is not a participant in civil disputes. Thus, the private nature of a civil proceeding distinguishes it from criminal matters. Georgia v. McCollum, 505 U.S. 42, 66-67, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Matter of Kozlov, 79 N.J. 232, 249, 398 A.2d 882 (1979); State v. Ward, 303 N.J.Super. 47, 696 A.2d 48 (App.Div.1997).
It is with these principles that the "good cause" requirement of N.J.S.A. 2C:25-29d is interpreted. A plaintiff files a complaint attempting to obtain a civil restraining order against an abuser. The dispute exists between the plaintiff and defendant, whereas the restraining order governs the future of the private relationship between those two parties. While there may be a criminal element to a domestic violence dispute, the action from which a restraining order evolves is civil. If a plaintiff wishes to dissolve the restraining order, the Act requires no further justification from plaintiff other than a showing that there is a lack of coercion, voluntariness and that plaintiff understand the "cycle of violence" and the consequences of dismissing a restraining order. If the defendant seeks to dismiss a restraining order issued against him or her, these assertions have a different conclusion. The defendant does not institute the domestic violence action and the burden to dismiss should be more stringent. Given the nature of domestic violence and that the defendant is a perpetrator of some kind of abuse, the "good cause" requirement in N.J.S.A. 2C:25-29d is especially applicable to a defendant. Thus, if plaintiff has the power to institute a civil action, she or he should have the power to dismiss a civil action.

(II)
The question that remains is whether plaintiff's request to dismiss a restraining order must be heard by the judge who issued the final restraining order. N.J.S.A. 2C:25-29d requires that an application to dismiss an FRO be made before the judge who issued the FRO. Based on this opinion, N.J.S.A. 2C:25-29d does not apply to a plaintiff seeking to dismiss a restraining order. The Manual has an independent requirement that a plaintiff seeking to dismiss an FRO appear before the judge who issued the FRO.
There is an exception to the "same judge" rule that allows any judge to hear a dismissal application, if the judge has a "complete record" of the FRO hearing. When the defendant seeks to dismiss an FRO against him or her, the "complete record" must include the actual transcript of the FRO hearing. Kanaszka, supra at 600, 713 A.2d 565. A defendant's application to dismiss requires a showing of a "substantial change of circumstances" *1253 which is based on a rationale of providing victims of domestic violence with the maximum protection from abuse that the law can provide. Id. at 607, 713 A.2d 565. N.J.S.A. 2C:25-18. The full transcript of the FRO hearing is the only way that a judge, can determine whether such a "substantial change in circumstances" truly exists. However, when a plaintiff seeks to dismiss her own FRO, it is only necessary to know whether the plaintiff understands the "cycle of violence," the consequences of a dismissal and whether the request to dismiss is voluntary and without coercion.
The plaintiff's court file contains the following relevant information: the domestic violence complaint, an affidavit providing the basis for a restraining order and an affidavit providing the basis for the dismissal. These documents, and thorough examination of the plaintiff, provide the information whether the request to dismiss should be granted. It is only necessary to ascertain whether the plaintiff understands the "cycle of violence," the consequences of the dismissal and whether the request to dismiss is voluntary and without coercion. Even if the file was lost, a transcript could not be obtained or the judge who issued the FRO had no recollection of the FRO hearing, the court has available the examination of the plaintiff. No matter what the circumstances, it is only with thorough examination that it can best be determined whether the plaintiff understands "cycle of violence," the consequences of the dismissal and whether the request to dismiss is voluntary and without coercion.
A judge who heard the FRO or even a judge who has the transcript of the FRO hearing is provided little additional information for the determination whether plaintiff's request to dismiss should be granted. For an FRO to be granted, there must be proof of domestic violence. The greater the violence, the greater the concern that the request to dismiss may be coerced or thus, not voluntary. Any history of domestic violence may assist the judge in determining whether a plaintiff is caught in the "cycle of violence." A restraining order is limited to the facts contained in the domestic violence complaint. It is a violation of due process to issue a restraining order based on acts of domestic violence not mentioned in the complaint. J.F. v. B.K. 308 N.J.Super. 387, 706 A.2d 203 (App.Div.1998). Information pertaining to acts of violence are available without a transcript. Consistent with J.F., the extent of the violence is included in plaintiff's complaint and the affidavit submitted with the application for the restraining order. The details of the violence is available though examination of the plaintiff at the "dismissal hearing."
The more time that elapses between the FRO hearing and the "dismissal hearing," the greater the "same judge" requirement is diluted. Here, twelve months passed since the restraining order was granted. It is highly unlikely that the trial judge would recall any more facts than those available in the file. Every year in New Jersey there are more than 45,000[3] domestic violence complaints filed, and if a 100 New Jersey Family Court Judges heard an equal number of cases, each judge would have to recall 450 domestic violence cases every year. Since the domestic violence cases are not evenly divided among the 100 Family Judges, this number is substantially greater for judges who hear these cases.
Moreover, the "same judge" requirement has the potential of creating unnecessary problems for victims of domestic violence. The judge who issued the restraining order may no longer be assigned to the Family Court, may be involved in a proceeding that cannot be easily interrupted for an FRO dismissal application or may be on vacation. A plaintiff seeking to dismiss a restraining order may have work responsibilities, transportation concerns, or child care problems. The problems bear heavily on a plaintiff's ability *1254 to appear before the court. They are not isolated, but occur on a daily basis when dealing with thousands of restraining orders dismissed every year.[4]
Under these circumstances, the N.J.S.A. 2C:25-29d "good cause" requirement to dismiss a restraining order applies to a defendant and not to the plaintiff. To dismiss at plaintiff's request, plaintiff must understand the "cycle of violence," the consequences of the dismissal and that the request to dismiss must be voluntary and without coercion. Any Family Court Judge may dismiss a restraining order if there is a "complete record" adequate to demonstrate that the plaintiff understands these points and the request to dismiss is made voluntary and without coercion. In this case a "complete record" is the domestic violence complaint, the affidavit filed with the complaint, the affidavit for the dismissal and the testimony of the plaintiff.
Based on the foregoing, this court grants plaintiff's request to dismiss the final restraining order, even though it did not issue the original order.
NOTES
[1] Domestic violence occurs in three distinct stages: phase one includes tension-building and minor battering incidents; phase two is where the batterer becomes intolerable and the violence becomes more serious; and phase three includes the batterer's extreme contrition and loving behavior with promises to get help, called, "honeymoon period." After stage three, the phases can repeat and the violence may escalate. State v. Kelly, 97 N.J. 178, 193, 478 A.2d 364 (1984).
[2] Without a restraining order there is nothing to prevent a defendant from contacting the plaintiff, and in this case, the defendant moving back in with the plaintiff.
[3] See Ciancia, Report on the Prevention of Domestic Violence Act, August 1998 3.
[4] See Id. at 15.