796 A.2d 306 (2002)
350 N.J. Super. 570
Pamela KELLEHER, Plaintiff
v.
Anthony GALINDO, Defendant.
Superior Court of New Jersey, Chancery Division, Camden County, Family Part.
Decided January 22, 2002.
*307 No appearance by Plaintiff.
No appearance by Defendant.
KASSEL, J.S.C.
This case presents an issue of first impression concerning whether an "indefinite" temporary restraining order (TRO) can be issued pursuant to the Prevention of Domestic Violence Act of 1991 (N.J.S.A 2C:25-17 to 33) (the Act), where the plaintiff has requested dismissal of the TRO, but had previously obtained eight TROs against the defendant in the past five years, with each of those prior TROs having been dismissed shortly after their issuance, usually based upon plaintiff's failure to appear for the hearing to determine whether a final restraining order (FRO) should be issued. While there are several reported cases concerning the dismissal of an FRO, there are no reported cases concerning the dismissal of a TRO pursuant to the Act, particularly involving the type of tortured domestic violence history involved in this case[1].
*308 In order to understand the nature of the relationship between plaintiff and defendant the court will set forth the history of domestic violence TROs that plaintiff has obtained against defendant:
1. On December 3, 1996 plaintiff obtained her first TRO against defendant. Plaintiff alleged in her compliant in support of the TRO that defendant had pushed her up against a wall, was telephoning her at least 20 times a day, and was banging on her door. The TRO was dismissed on January 8, 1997 because plaintiff failed to appear at the hearing date to determine whether an FRO should be issued.
2. On March 26, 1998 plaintiff obtained her second TRO against defendant. Plaintiff alleged in her complaint in support of the TRO that defendant had punched and broken the drivers' side window of plaintiff's car and in doing so had struck plaintiff in the face as she sat in her car. The TRO was dismissed, in an undated order, which conditioned the dismissal on the defendant undergoing anger management counseling. There is no indication in the file that in fact defendant ever completed any type of anger management counseling.
3. On December 10, 1998 plaintiff obtained her third TRO against defendant. Plaintiff's complaint in support of the TRO alleged that defendant repeatedly assaulted plaintiff about the head. The TRO was dismissed on December 21, 1998 based on plaintiff calling the Family Division's domestic violence unit five days earlier, wherein she advised that she wanted the TRO dismissed.
4. On January 23, 1999 plaintiff obtained her fourth TRO against defendant. Plaintiff's complaint in support of the TRO alleged that defendant "continues to harass and stalk plaintiff". The TRO was dismissed by order dated February 22, 1999 based on plaintiff's failure to appear at the hearing to determine whether an FRO should be issued.
5. On June 15, 1999 plaintiff obtained her fifth TRO against defendant. Plaintiff's complaint in support of the TRO alleged that defendant had telephoned plaintiff at work and advised that he was going to "... get her, and that she would be dead". The TRO was dismissed on June 29, 1999 because plaintiff failed to appear at the hearing to determine whether an FRO should be issued.
6. On March 11, 2000 plaintiff obtained her sixth TRO against defendant. Plaintiff's complaint in support of the TRO alleged that defendant had pushed plaintiff and had bit her hand. Plaintiff further alleged that defendant subsequently phoned plaintiff and threatened to kill her if the criminal charges resulting from said incident where not dropped. The TRO was dismissed by order dated March 30, 2000 because plaintiff failed to appear at the hearing to determine whether an FRO should be issued.
7. On October 16, 2000 plaintiff obtained her seventh TRO against defendant. Plaintiff's complaint in support of the TRO alleged that over the past weekend defendant telephoned plaintiff approximately 50 times and advised that he would do bodily injury to plaintiff. The TRO was dismissed on November 9, 2000 because plaintiff failed to appear at the hearing to determine whether an FRO should be issued.
8. On January 14, 2001 plaintiff obtained her eighth TRO against defendant. Plaintiff's complaint in support of the TRO alleged that defendant had called plaintiff *309 and threatened plaintiff and her mother with physical harm and also to break into their house. The TRO was dismissed by order dated January 30, 2001 because plaintiff failed to appear at the hearing to determine whether an FRO should be issued.
9. On January 3, 2002 plaintiff obtained her ninth TRO against defendant. Plaintiff's complaint in support of the TRO alleged that during a verbal argument defendant punched plaintiff in the chest and face, and that defendant also threatened to kill plaintiff. Plaintiff failed to appear at the January 10, 2002 hearing that had been scheduled to determine whether an FRO should be issued, but the TRO was not dismissed as per this court's prior instruction to the Family Division's domestic violence unit. A domestic violence unit team leader spoke with plaintiff on January 11, 2002, and plaintiff advised that she could not find a babysitter and wanted to dismiss the TRO. The team leader advised plaintiff at that time that she would have to appear before this court on January 22, 2002 at 10 am, and at that time this court would hear plaintiff's motion to dismiss the TRO. Plaintiff failed to appear on January 22, 2002.[2] Plaintiff has not provided any explanation for her non-appearance. The court then read its oral opinion into the record, and entered an "indefinite" TRO[3]. The indefinite TRO provides, inter alia, that the defendant is barred from having any type of contact or communication with the plaintiff.
The Prevention of Domestic Violence Act was enacted to address the fact that domestic violence is a serious crime against society, to ensure victims of domestic violence the maximum protection from abuse that the law can provide, and explicitly provides that it is the responsibility of the courts to protect victims of violence that occurs in the family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions. N.J.S.A. 2C:25-18.
There is only one provision in the Act that makes explicit reference to the dismissal of a restraining order, and that provision relates only to final restraining orders. N.J.S.A. 2C:25-29d. See also I.J. v. I.S., 328 N.J.Super. 166, 173, 744 A.2d 1246 (Ch.Div.1999). That provision provides, in pertinent part, that an FRO may be dissolved upon "good cause shown". There is a split in authority concerning whether that provision applies to both plaintiffs and defendants, or to just defendants. Compare I.J. v. I.S. supra with Stevenson v. Stevenson, 314 N.J.Super. 350, 714 A.2d 986 (Ch.Div.1998).
In regard to the dismissal of a TRO, as opposed to an FRO, the only relevant language contained in the Act provides that "An order for emergency ex parte relief shall be granted upon good cause shown and shall remain in effect until a judge of the Family Part issues a further order." (emphasis added) N.J.S.A. 2C:25-28i. The Domestic Violence Procedures Manual (rev. ed Nov. 1998) issued jointly under the authority of the Supreme Court of New Jersey and the Attorney *310 General of New Jersey, provides that if a plaintiff wishes to withdraw a complaint after a TRO has been issued but prior to the entry of a FRO, the plaintiff must appear in person before a Family Division judge, and prior to that court appearance, a domestic violence unit staff person must ascertain that the plaintiff has not been coerced, understands the cycle of domestic violence, is aware of the protective resources available, understands that the dismissal of the TRO will eliminate the protections under same, and is also aware that he/she can seek the protection of a TRO in the future should there be a future act of domestic violence. The plaintiff must then complete a form affidavit and will then appear before a Family Division judge. The court must then determine that the request for the dismissal of the TRO is an informed one and is not made under duress. Id. at 57-58. The Manual further provides that the request for dismissal of the TRO should be granted unless the gravity of the alleged violence makes an appearance before the judge by the defendant appropriate. Id. at 57-58.
While the plaintiff in this case has telephonically conveyed to a domestic violence unit staff person her desire to dismiss the TRO, she has not formally appeared in court to request the dismissal of the TRO. Moreover, prior to obtaining the TRO at issue, plaintiff had obtained eight TROs against defendant during the past five years, two of which were dismissed at her request and the other six were dismissed because of her failure to appear at the hearing to determine whether an FRO should be issued. Additionally, defendant previously obtained two TROs against plaintiff, both of which were dismissed at his request. Moreover, six prior contempt complaints issued at the request of plaintiff because of plaintiff's allegations that defendant had violated the prior TROs were dismissed prior to trial. Given the tortured history of these litigants, the court at this point is very concerned with these litigants abusing the court process.
This court has no doubt that if it were to grant plaintiff's request to dismiss this most recent TRO, it would not be very long before plaintiff was back in the Cherry Hill Municipal Court seeking a tenth TRO against defendant. The plaintiff and defendant have a tortured and stormy relationship, and the obtaining of domestic violence TROs, and allegations of violations thereof, seem to be as much a part of their relationship as going to the movies or on a holiday trip. The court cannot enter a FRO, which would put an end to this repeated cycle of alleged domestic violence, followed by the issuance of a TRO, and then the dismissal of the TRO shortly thereafter, as plaintiff's repeated failure and/or refusal to appear for an FRO hearing precludes this Court from hearing the requisite testimony in order to enter a FRO pursuant to N.J.S.A. 2C:25-29.
In each of the eight previous TROs obtained by plaintiff, as well as the two previous TROs obtained by defendant, and also in regard to the eight previous contempt charges between them, (all of which were ultimately dismissed prior to an adjudicatory hearing), the local police department (usually the Cherry Hill Police Department) had to investigate the allegations of domestic violence, and the allegations then had to be presented to the municipal court judge so that a TRO determination could be made. Rule 5:7A. In most of the domestic violence allegations, or allegations of violations of TROs, police reports were prepared by the investigating police department, and after the matter was presented to the municipal court judge and the TROs were issued, the TROs had to be processed by the domestic violence unit of the Family Division in the Superior Court, *311 and set down for a hearing date to determine if an FRO should be issued. The resources of both law enforcement and the court system are finite, and time and personnel spent on this plaintiff's TROs represents lost time and resources not being spent on domestic violence matters and other emergent matters that might otherwise warrant greater attention than may have been received. The TRO history of these parties has made a mockery of the Domestic Violence Act, and trivializes same. The Appellate Division noted, in a different context, that "There are too many substantial and significant domestic violence matters requiring the urgent attention of the court system to squander judicial and prosecutorial resources on patently unmeritorious litigation......" State v. Wilmouth, 302 N.J.Super. 20, 23, 694 A.2d 584 (App.Div.1997). In the present case, the court is less concerned that the numerous previous TROs were "unmeritorious" than it is concerned that the constant cycle of obtaining a TRO and then shortly thereafter dismissing the TRO is squandering judicial and law enforcement resources and diverting attention from urgent and meritorious domestic violence matters. It should be noted that, according to records obtained from the Administrative Office of the Courts, in calendar year 2000 there were 36,021 TROs issued statewide, with 3,528 TROs being issued in Camden County. Camden County was second only to Essex County in the amount of TROs issued during that year.
It is this court's opinion that, despite plaintiff's telephonic request to dismiss this most recent TRO, the plaintiff's past history of obtaining eight TROs against defendant in a five year period, all of which were dismissed prior to an FRO hearing, along with six prior contempt charges filed against defendant based upon plaintiff's allegation of violations of those TROs, all of which were likewise dismissed prior to an adjudication, justifies this court's denial of plaintiff's request to dismiss the TRO and instead justifies the issuance of an indefinite TRO. Motion to dismiss TRO denied. Indefinite TRO issued.
NOTES
[1] In addition to the nine TROs that plaintiff has obtained against defendant, there have been six contempt charges filed against defendant based upon plaintiff's allegation that defendant had violated the TROs, all of which were dismissed prior to trial based on either the plaintiff's request, the plaintiff's non-appearance at trial, or at the prosecutor's request. Additionally, defendant has in the past obtained two TROs against plaintiff, both of which were dismissed at defendant's request, and there have been two contempt charges filed against plaintiff based upon defendant's allegations that plaintiff violated the TROs, both of which were likewise dismissed at defendant's request.
[2] The Domestic Violence Procedures Manual provides that "Warrants shall not be issued to secure the presence of plaintiff in court where plaintiff has failed to appear...." Id. at 43.
[3] It should be noted that although the Prevention of the Domestic Violence Act does not provide for an "indefinite" TRO, the Domestic Violence Procedures Manual provides that where a defendant cannot be served the Court shall extend the TRO which shall remain in effect until the defendant is served or until specifically superceded by a further order of the court Id. at 44. In Camden County it is the common practice to designate such orders "indefinite" TROs.