# **RECORD IMPOUNDED**

### **NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2603-19

K.M.R.,

    Plaintiff-Respondent,

v.

B.R.,[1]

    Defendant-Appellant.

_____

Submitted October 18, 2021 – Decided November 5, 2021

Before Judges Messano and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2195-13.

Mario J. Persiano, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

---

[1] The parties were improperly pled as R.K.M. and R.B. We use their initials in accordance with <u>Rule</u> 1:38-3(d)(10).

Defendant B.R. appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA). On appeal, he raises the following points for our consideration:

> I. THE TRIAL COURT'S FAILURE TO FIND A PREDICATE ACT AND OTHERWISE CONDUCT A SILVER v. SILVER[2] ANALYSIS WARRANTS REMAND.
> (Not raised below)
>
> II. REMAND IS WARRANTED BECAUSE OF THE COURT'S UNCLEAR CREDIBILITY FINDINGS AND OVERALL FAILURE TO COMPLY WITH R[ULE] 1:7-4.
> (Not raised below)
>
> III. THE PREDICATE ACT OF HARASSMENT WAS NOT ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE.
> (Not raised below)

We agree with most of the arguments raised in points I and II and, as such, cannot determine on the record before us the merits of the contentions raised in point III. Accordingly, we vacate the FRO, reinstate the "indefinite" temporary

---

[2] 387 N.J. Super. 112 (App. Div. 2006).

restraining order (ITRO),[3] and remand for the trial court to make full and complete findings of fact and conclusions of law.

I.

The procedural posture of this matter is unusual. The trial court conducted the one-day FRO hearing on January 14, 2020, nearly seven years after the February 9, 2013 domestic violence complaint and March 6, 2013 ITRO were issued. We glean from the record that defendant failed to appear at the originally scheduled March 6, 2013 return date for the FRO hearing, and the judge issued the ITRO on that date. Although the date on which service was made is unclear from the record, defendant contends he was served in court during the parties' "child support" proceedings.[4]

---

[3] There is no provision in the PDVA that provides for the issuance of an ITRO. However, the Domestic Violence Procedures Manual provides that when it is unlikely the defendant will be served within a reasonable period of time, the court can issue an ITRO that continues the relief requested by the plaintiff and a final hearing will be scheduled when the defendant is served. Sup. Ct. of N.J. & Att'y Gen. of N.J., State of New Jersey Domestic Violence Procedures Manual, § 4.9.9 (rev. 2008), https://www.njcourts.gov/courts/assets/family/ dvprcman.pdf. Apparently, the issuance of ITROs in the Camden Vicinage has been "common practice." Kelleher v. Galindo, 350 N.J. Super. 570, 576 n. 3 (Ch. Div. 2002).

[4] The parties disagree as to whether defendant knew about the ITRO before he was served. According to plaintiff, the issuing judge telephoned defendant from the bench while plaintiff was in court on March 6, 2013, and defendant confirmed an accident prevented his appearance at the hearing. Defendant

At some point, the FRO hearing was scheduled for November 18, 2019, but the hearing was adjourned to December 2, 2019 to afford the parties the opportunity to retain counsel. Ultimately, the FRO hearing was held on January 14, 2020. Both parties were represented by counsel at the hearing.

According to the trial record, the parties cohabitated for about one year of their thirty-month relationship, which ended in May 2012. Their only child, R.R., was born in September 2011; defendant's mother was awarded residential custody of R.R. in April 2012. The issuance of the FRO relates to the predicate acts of harassment under the PDVA, N.J.S.A. 2C:33-4; N.J.S.A. 2C:25-19(a)(13), which occurred months after the parties' relationship ended. Plaintiff described those acts and multiple prior acts of domestic violence, alleged in the complaint, which occurred during the parties' relationship. Many of those acts resulted in the issuance of at least three temporary restraining orders (TRO) that plaintiff rescinded. Defendant denied all acts of abuse.

In essence, plaintiff testified that after she ended the parties' relationship in May 2012, defendant would continuously "pop up at certain places," following plaintiff "basically everywhere [she] went." On multiple occasions,

---

denied receiving any such call. In any event, service of the ITRO is not at issue on appeal.

A-2603-19

defendant appeared at plaintiff's place of work, the park, and her parents' home. Plaintiff assumed defendant learned about her whereabouts through social media because she posted her family outings on Facebook. Plaintiff changed her telephone number at least five times to prevent defendant from contacting her. She also moved several times because she felt unsafe whenever defendant discovered her residence.

Plaintiff also testified about several prior incidents of domestic violence. While plaintiff was pregnant in 2011, defendant: "closed [her] head in the oven door"; "stomped on [her]" to "basically make [her] have a miscarriage"; forced her at gunpoint to cook for him; struck her with a gun in the back of her head; "put [her] through a[n] oven door"; "stabbed [her] with a knife on [her] arm"; and "punched [her] in [her] ribs," causing swelling.

On one occasion in July 2012, defendant followed plaintiff in his car while she was walking. When plaintiff refused defendant's attempts to pick her up, defendant's car "jump[ed] the curb and hit[]" her, causing second-degree burns on the back of her left leg that required medical treatment. On another occasion that month, defendant appeared outside plaintiff's doctor's office, approached her car as she was parking, "took [her] keys out [of] the ignition and threw them

5

in a bush." Plaintiff did not seek a restraining order or press charges because defendant had threatened to "send [her] back to [her] family in pieces."

Plaintiff also testified about the issuance of three prior TROs against defendant. The first TRO was issued after defendant broke into her apartment, damaged the door, broke the windows, threw things at the wall, and "put [her] through a[n] oven door, [and] through a refrigerator door." On the second occasion, defendant punched plaintiff in the face, causing a black eye. The third TRO was issued after defendant "ripped [her] hair out from [her] head," causing a four-inch bald spot. That time, defendant dragged plaintiff through the house and outside in front of other people. Plaintiff rescinded at least one of those TROs because defendant threatened to kill plaintiff and her family if she did not do so.

Plaintiff presented no documentary proof of the prior TROs. However, over defendant's objection, the trial court admitted in evidence two police reports on redirect examination of plaintiff pertaining to plaintiff's hair pulling accusation and the burglary allegation to demonstrate reports were made, and not to establish the truth of the matters asserted.

According to plaintiff, defendant had not contacted her after the March 6, 2013 ITRO was entered, and the parties have been in the same location with

6

their son on two occasions without issue.  Plaintiff testified she has worked in the medical field and, as such, self-treated most of the injuries caused by defendant.

Regarding the lapse of time between the entry of the ITRO and FRO, plaintiff stated that it was defendant's responsibility to contact the court and plead his case to lift the ITRO.  Although she thought the ITRO "ha[d] been doing its job," plaintiff sought the FRO for "peace of mind" and "closure" because she was afraid of defendant.

Defendant offered a vastly different version of the events.  For example, defendant denied pulling out plaintiff's hair out, claiming she caused her bald spot by using hair clippers.  Although defendant acknowledged he had pushed plaintiff away from him on one occasion, he maintained there was "abuse from both sides," which ultimately led to the demise of their relationship.

At the conclusion of testimony, defense counsel argued that "credibility [wa]s a major factor here" where so much time had elapsed after the issuance of the ITRO and there had been "no problems during that period of time."  He therefore argued an FRO was unnecessary to protect plaintiff who had plenty of opportunity to "make the restrain[ts] permanent."  According to defense counsel, plaintiff did not demonstrate she was fearful of defendant.

A-2603-19

Immediately following summations, the trial court rendered an oral decision. Stating at the outset the standard of proof for obtaining an FRO is preponderance of the evidence, the court noted it "need[ed] to make a determination as to who[m] it believe[d]." Finding plaintiff credible but defendant "not horribly uncredible," the court ultimately found plaintiff more believable. According to the court, plaintiff

> has been the subject of substantial abuse in the past, that she's done certain things that appear in police reports reporting a problem. As to the extent of that problem . . . we don't know. We won't read those police reports, but just know that she made reports to the police.

The court continued:

> Victims of domestic violence don't necessarily report domestic violence. They are afraid. They keep to themselves. They don't necessarily get treatment. And that's what we have. The plaintiff indicates that she's been a victim. The court's satisfied that that proof is creditable, and that proof is accepted by the court as a basis for the restraining order.
>
> As far as other issues here, this court finds that this is not a civil case. It is a case of Cesare v. Cesare[5] in which there are substantial allegations of abuse which the court is accepting as credible. When someone is abused to the point of the description here, it is a serious act of abuse in and of itself over a couple of years certainly is . . . someone is entitled to a final restraining order . . . .

---

[5] 154 N.J. 394 (1998).

Without citing the PDVA or <u>Silver</u>, the court entered the FRO. After commenting that custody of R.R. would remain undisturbed the court added:

> [T]here were some issues of credibility as to certain things occurring, whether a judge got on the phone and called somebody. It would be interesting to see if a transcript for [the ITRO] proceeding could be obtained. But for now, the court is satisfied that the credibility is clearly established. [P]laintiff is a serious victim of abuse over a period of time, serious allegations of abuse regarding second-degree burns, which I find that . . . plaintiff can self-diagnose, and other issues of hair being pulled. These are not minor, minor matters, and the court finds that that is based on the clear credible evidence presented.

This appeal followed.

Our scope of review is limited when considering an FRO issued by the Family Part. <u>See</u> <u>D.N. v. K.M.</u>, 429 N.J. Super. 592, 596 (App. Div. 2013). That is because "[w]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." <u>Ibid.</u> "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." <u>Cesare</u>, 154 N.J. at 411-12. Deference is particularly appropriate where the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. <u>Id.</u> at 412.

We review de novo the court's conclusions of law. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. See Silver, 387 N.J. Super. at 125-27. Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011).

A trial court is required to make specific findings of fact and state its conclusions of law. R. 1:7-4(a) (requiring the court in non-jury trials "by an opinion or memorandum decision, either written or oral" to "find the facts and state its conclusions of law"); see also Elrom v. Elrom, 439 N.J. Super. 424, 443

10

(App. Div. 2015). As our Supreme Court has long recognized, the lack of sufficient findings of fact and conclusions of law does a disservice to this court's informed review of any matter. See Curtis v. Finneran, 83 N.J. 563, 570 (1980) (observing "[n]aked conclusions do not satisfy the purpose of R. 1:7-4"). As the Court stated in R.M. v. Supreme Court of New Jersey, 190 N.J. 1, 12 (2007), factual findings are "fundamental to the fairness of the proceedings and serve[] as a necessary predicate to meaningful review." See also Ducey v. Ducey, 424 N.J. Super. 68, 74 (App. Div. 2012). "The absence of adequate findings . . . necessitates a reversal." Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996).

On the current record, we cannot discern from the trial court's terse oral decision the bases for its determination to grant the FRO. The court failed to make any analysis under either Silver prong.

While the court generally found credible plaintiff's version of the events, including prior acts of domestic violence, the court failed to specifically find a predicate act of harassment occurred around February 9, 2013, as alleged in the domestic violence complaint. Other than a passing refence that this was not "a mere case of harassment," the court made no reference to the harassment statute under the PDVA. N.J.S.A. 2C:33-4; N.J.S.A. 2C:25-19(a)(13). Moreover, a

11

finding of harassment under the first <u>Silver</u> prong requires proof that the defendant acted "with purpose to harass." N.J.S.A. 2C:33-4; <u>see</u> <u>Silver</u>, 387 N.J. Super. at 124. No such finding was made here.

We reach the same conclusion as to the second <u>Silver</u> prong. Other than a general finding that domestic violence victims "are afraid," the court made no analysis as to whether restraints were necessary here "to protect the victim from an immediate danger or to prevent further abuse." <u>Id.</u> at 127. This prong takes on special significance in the present case given the substantial lapse of time between the entry of the 2013 ITRO and the 2020 FRO hearing, apparently without incident.

In sum, the trial court failed to sufficiently articulate its factual findings and conclusions of law. Although the record may contain sufficient evidence to sustain the entry of an FRO, the court's findings are insufficient for effective appellate review.

We therefore vacate the FRO, reinstate the ITRO, and remand this matter to the trial court for amplified findings of fact and conclusions of law as to both <u>Silver</u> prongs based on the existing record. By discharging its duty in this regard, the court will ensure that "the litigants have been heard and their

A-2603-19

arguments considered.  Justice requires no less."  <u>Bailey v. Bd. of Review</u>, 339

N.J. Super. 29, 33 (App. Div. 2001).

Reversed and remanded.  The ITRO shall remain in place until the remand

is completed.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2603-19