694 A.2d 584

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. WILLIAM C. WILMOUTH, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1997—Decided June 9, 1997.

Before Judges PRESSLER, STERN and WECKER.

*Allen Hantman* argued the cause for appellant (*Morris* and *Hantman*, attorneys; *Mr. Hantman*, on the brief).

*Thomas E. Bracken*, Assistant Prosecutor, argued the cause for respondent (*Dennis O'Leary*, Sussex County Prosecutor, attorney; *Mr. Bracken*, on the brief).

PER CURIAM.

Defendant William C. Wilmouth appeals from a judgment of conviction finding him guilty of the disorderly persons offense of violation of a domestic violence restraining order, *N.J.S.A.* 2C:29–9b, and imposing a penalty of one year of probation, a fine of $250, and VCCB and SSCP penalties totalling $125. We reverse and remand for entry of an order vacating the judgment.

Defendant and D.A. are the unmarried parents of a baby girl. A final restraining order, based on defendant's adjudicated harassment of D.A., was entered against defendant on September 7, 1995, under the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 *et seq.* The order, among its other terms, prohibited defendant "from having any (oral, written, personal or other) form of contact or communication with" D.A. D.A. was granted custody of the child subject to defendant's right of "liberal and reasonable" visitation. The order stipulated that visitation was to be arranged between D.A. and defendant's mother and that D.A. would bring the child to and pick the child up from D.A.'s mother's home. It is, however, undisputed that following the entry of the order, the visitation arrangements were made directly between D.A. and defendant by telephone. Since he did not have her telephone number, it was she who called him to fix not only

the time of the visitation but also to fix the place of drop-off and pick-up which apparently was not always at defendant's mother's home but, for D.A.'s convenience, occasionally at restaurants or other public places. As of December 2, 1995, however, the restraining order had not been amended for the purpose of expressly providing for direct communication between D.A. and defendant regarding visitation or, indeed, any other matter concerning the welfare of the child.

On December 2, 1995, defendant had the child with him at his parents' home. D.A. went there to pick her up at about 6 p.m. accompanied by a friend and by a local police officer whose presence she had requested to witness the exchange. Upon their arrival, defendant's father carried the baby out and defendant followed, carrying the car seat, the diaper bag, and other paraphernalia. Defendant was obviously upset and angry when he saw the officer. He addressed D.A., asking her in what she described as a hostile manner and in a gruff voice, "Am I going to get to see her tomorrow?" The police officer then suggested to defendant that defendant speak to him. Defendant said, according to the officer, "I've got nothing to say to you," and went back into the house. That was the entire incident, and the contempt order was based on defendant asking D.A., in the presence of a police officer, her friend and his father, if he would see his daughter the following day.

We do not regard the question defendant asked of D.A. as constituting a contempt of the restraining order, which, we were told at oral argument, was thereafter amended to permit communication between defendant and D.A. respecting visitation. We reach this conclusion because D.A. herself had construed the order as in no way interdicting direct communication between her and defendant regarding visitation. It was she who had regularly initiated such communications and she who had regularly requested defendant's cooperation in ad hoc modification of the order to change the stipulated place of drop-off and pick-up. Thus, even if the original order did not implicitly recognize the necessity of

visitation communications between the parties—and we are by no means sure that it did not—D.A.'s own conduct did. In sum, the parties had reached an accommodation between themselves, initiated by D.A., to accomplish defendant's visitation with the child, and his question to her regarding the next day's visit was obviously well within the contours of that accommodation. It cannot conceivably, under the circumstances here, be regarded as constituting quasi-criminal conduct subjecting defendant to the whole panoply of penalties imposable for such conduct.

We make these further observations. The State's brief, while insisting that defendant's asserted technical violation of the order requires the contempt adjudication here made, nevertheless recognizes the triviality of the violation here, characterizing this whole proceeding as "a tempest in a teapot." While we disagree that the contempt adjudication was appropriate, we are in full agreement that this was a trivial, non-actionable event, and we are of the further view that the prosecutor, as a matter of prosecutorial discretion, clearly had the right, had he chosen to exercise it, not to prosecute this matter. There are too many substantial and significant domestic violence matters requiring the urgent attention of the court system to squander judicial and prosecutorial resources on patently unmeritorious litigation which, moreover, unfairly subjects people to criminal penalties. The Domestic Violence Act affords critically needed protections in appropriate situations. It was not intended to attempt to regulate and adjudicate every loss of temper, angry word, or quarrel between persons connected by a familial relationship. *See, e.g., State v. L.C.,* 283 *N.J.Super.* 441, 662 *A.*2d 577 (App.Div.1995), *certif. denied,* 143 *N.J.* 325, 670 *A.*2d 1066 (1996); *Corrente v. Corrente,* 281 *N.J.Super.* 243, 657 *A.*2d 440 (App.Div.1995); *Peranio v. Peranio,* 280 *N.J.Super.* 47, 654 *A.*2d 495 (App.Div.1995); *Murray v. Murray,* 267 *N.J.Super.* 406, 631 *A.*2d 984 (App.Div.1993). It is essential that all institutions involved in the administration and enforcement of the Act do so in a manner that promotes rather than subverts its policies and purposes.

The judgment of conviction appealed from is reversed and we remand for its vacation.