# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0394-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

A.D.,[1]

    Defendant-Appellant.

_____

Argued August 5, 2019 – Decided August 13, 2019

Before Judges Rose and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0422-18.

Rubin M. Sinins argued the cause for appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC, attorneys; Rubin M. Sinins, of counsel and on the briefs; Laura Nicolette, on the brief.)

Nicole Paton, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County

---

[1] We use fictitious names to protect the confidentiality of the parties.

Prosecutor, attorney; Nicole Paton, of counsel and on the brief.)

PER CURIAM

Following a bench trial in the Family Part, defendant A.D. was convicted of contempt, N.J.S.A. 2C:29-9(b), a disorderly persons offense, for violating a final restraining order (FRO) issued under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He was acquitted of harassment, N.J.S.A. 2C:33-4(a), a petty disorderly persons offense. Defendant was sentenced to a one-year probationary term, Alternatives to Domestic Violence counseling, fines and penalties. We reverse because even if defendant's conduct could be construed as a technical violation of the restraining order, it was too trivial to be actionable as a contempt. See State v. Wilmouth, 302 N.J. Super. 20, 23 (App. Div. 1997).

On October 23, 2014, the Family Part issued the FRO, which included a provision restraining defendant from having any form of contact or communication with Mary, the mother of his son, Michael, except as specifically noted. That same order granted Mary temporary custody of Michael, but did not prohibit visitation or any contact between defendant and Michael. Pursuant to an ensuing Family Part order, defendant was granted weekly parenting time on

Saturdays or Sundays. For nearly four years, no charges were filed against defendant for violation of the order.

The incident giving rise to this appeal arose from a chance encounter between the parties inside a CVS drugstore in Midland Park. At that time, Michael was eight years old. It is undisputed that: the store was located approximately one mile from defendant's residence; defendant frequented the store approximately one or two times per month; and prior to the incident date, the parties had never seen each other in that CVS.

A bench trial was conducted on August 22, 2018. The State presented the testimony of Mary and introduced into evidence a surveillance video which captured the encounter between the parties, without audio.[2] Defendant testified on his own behalf and called Midland Park Police Officer Michael Davite as a witness.

Mary testified that she and Michael were standing at the check-out counter when "all of a sudden[, she] heard [defendant] call to [her]. He yelled out [']hey[',] and [she] turned around and . . . saw him and [Michael] saw him. And [Michael]'s reaction was fear." Mary said when she turned around, defendant

---

[2] Neither party provided the video recording on appeal. At oral argument before us, the parties did not dispute the judge's account of the recording's depictions.

A-0394-18T2

looked at her "in the eyes" and gave her a "half[-]smirk smile." Thereafter, Michael ran toward Mary as defendant "scream[ed] and yell[ed, 'I] miss you, I haven't seen you, I miss you, man['] . . . ." According to Mary, their son "was so upset he tripped, he fell." Mary did not report the incident to the police until the following week after Michael experienced "difficulty at school." Mary said she "was more concerned with [Michael] than [she] was with [her]self."

Mary stated she told Davite defendant was "yelling or screaming" during the incident, but Davite testified he could not recall whether she so stated. Davite's report did not reference defendant's tone of voice; it only indicated Mary relayed the substance of defendant's statement.

Defendant testified he was on the checkout line at the CVS, reading Mother's Day greeting cards that he intended to purchase, when he heard familiar voices. When he "looked up" he observed persons he "believed" were Mary and Michael "from behind." After Michael turned around and recognized him, defendant said, "[H]ey, buddy, how are you, I miss you, I'll see you soon." Defendant acknowledged that he made the statement in Mary's presence. Defendant said he used a "very soft" tone because he had not seen Michael "in three months."

A-0394-18T2

Assessing the credibility of the parties, the trial judge found Mary's testimony was "supported" by the video recording, whereas some of defendant's testimony was "directly contradict[ed]" by the footage.

Nonetheless, the judge found "a small portion of [defendant's] testimony believable." The judge elaborated:

> The videotape clearly indicates that for the approximate [fifteen], [sixteen] seconds that [Michael] and [Mary] were at the checkout counter, the first ten seconds of register one of the video indicates that [Michael] and [Mary] were at least once [sic] two feet apart.
>
> The video shows that [Michael] turned around. After [Michael] turned around to look behind him, he immediately look[ed] to the left in his mother's direction. Then a second to two seconds later both [Michael] and his mother turn[ed] around to look behind them, which would have been in the direction of [defendant].

Further, the judge "g[a]ve some weight to the fact that it was . . . a mere happenstance that all parties [were] in the store at the same time and . . . some weight to the testimony that [defendant] did not yell or scream at [Mary].

Citing our decision in State v. D.G.M., 439 N.J. Super. 630 (App. Div. 2015), the judge determined defendant's communication was a knowing violation of the FRO. According to the judge, "although defendant was speaking to . . . the parties' eight-year-old son, the communication and even the mere start

of the communication at [']hey['] is sufficient communication to fall within the parameters of a contempt violation, as it was communication with [Mary], the protected party present, and the son."

In essence, the judge acknowledged the remainder of the sentence was "directed to the son," but found the "generic hey" that started the sentence was sufficient to establish a contempt violation. Yet, when sentencing defendant the judge acknowledged defendant's "comments were really directed toward the child and not the mother. The mother just happened to be present." Further, in acquitting defendant of the harassment charge, the judge noted defendant's communication, including "saying [']hey['] globally" was "directed solely to the parties' minor child."

Defendant now appeals, raising the following points for our consideration:

POINT I

THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT'S WORDS CONSTITUTED CONTEMPT OF THE RESTRAINING ORDER.

A. [OMITTED]

B. The State Failed to Prove Beyond a Reasonable Doubt That Defendant's Communication to His Son in the Presence of the Protected Party was a Knowing Contempt in Violation of N.J.S.A. 2C:29-9[(b)].

1. The State failed to prove any violation of the express terms of the FRO.

2. The State failed to prove beyond a reasonable doubt that defendant knew his conduct was prohibited by the FRO.

3. [Defendant]'s conduct was reasonable.

4. The situation was a trivial, non-actionable event.

POINT II

THE TRIAL COURT'S LIMITATION ON DEFENDANT'S CROSS-EXAMINATION AND TESTIMONY CONSTITUTE AN ABUSE OF DISCRETION.

Our review of a trial judge's finding of guilt in a contempt proceeding is limited to determining "whether the record contains sufficient [credible] evidence to support the judge's conclusion." State v. J.T., 294 N.J. Super. 540, 544 (App. Div. 1996) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). Factual findings of the trial court are generally accorded deference given its "opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008).

A-0394-18T2

Because a violation of a restraining order is punishable as a criminal act, a defendant is entitled to the rights of all criminal defendants. We must, therefore, ensure the State has carried its burden of proving the defendant's guilt beyond a reasonable doubt. See N.J.S.A. 2C:1-13(a); State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999).

A person is guilty of contempt "if that person purposely or knowingly violates any provision in an order entered under the provisions of the [PDVA]." N.J.S.A. 2C:29-9(b)(1). Conduct that constitutes a violation of a domestic violence restraining order, which would otherwise not constitute a crime, is treated as a criminal disorderly persons offense and is prosecuted in the Family Part without indictment. Ibid.; N.J.S.A. 2C:25-30.

Here, the judge aptly recognized the parties were present at the CVS by "mere happenstance." Indeed, the parties had never previously occasioned that CVS at the same time. Because the judge determined defendant's communication was directed at Michael, however, we disagree with her legal conclusion that defendant's utterance of a "generic hey" was sufficient to support a criminal contempt conviction. Further, in view of the judge's findings that this was a chance encounter, and Mary "complete[d] the purchase at the register" before leaving the store, defendant's communication was simply too trivial an

event to prosecute.  See State v. S.K., 423 N.J. Super. 540, 547-48 (App. Div. 2012).  Doing so squanders judicial and prosecutorial resources and unfairly subjects people to criminal penalties.  Wilmouth, 302 N.J. Super. at 23.

Moreover, our decision in D.G.M. does not support the judge's decision here.  In that case, a complainant obtained an FRO against the defendant pursuant to the PDVA, which "'prohibited' [the] defendant 'from having any (oral, written, personal, electronic or other) form of contact or communication with'" the complainant.  439 N.J. Super. at 633.  Thereafter, the defendant and the complainant attended their child's soccer game.  Id. at 634.  The defendant sat near the complainant and recorded the game and the complainant on his cell phone.  Ibid.  The State charged the defendant with criminal contempt under N.J.S.A. 2C:29-9(b), and he was found guilty.  Ibid.  On appeal, we held that the defendant had engaged in a form of "communication" with the complainant. Id. at 640-41.  We decided, however, that defendant's conviction for contempt could not stand because he could not have known his specific conduct violated the FRO and could result in a criminal prosecution.  Id. at 642.

Unlike the defendant in D.G.M., defendant was completely unaware Mary would be present in the CVS on the date of the incident.  Further, his communication was directed at Michael, an unprotected party under the FRO.

A-0394-18T2

Accordingly, the factual circumstances presented cause us to conclude the incident amounted to "a trivial, non-actionable event." Krupinski, 321 N.J. Super. at 45; Wilmouth, 302 N.J. Super. at 23.

While the purpose of the PDVA is to provide maximum protection from abuse, defendant's conduct in this case cannot reasonably be considered as constituting criminal or quasi-criminal conduct subjecting him to the penalties for such conduct. Although we appreciate the trial judge's endeavor to be vigilant in the enforcement of the PDVA, the record facts simply do not warrant the criminal conviction. However, we take this opportunity to remind defendant, as did the judge, that the civil restraints remain in full force and effect. Because of our disposition of the appeal, we need not reach defendant's remaining arguments.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0394-18T2