**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0631-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

R.L.,

     Defendant-Appellant.

_____

Submitted October 16, 2023 – Decided December 29, 2023

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No: FO-07-0185-22.

R.L., appellant pro se.

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a bench trial in the Family Part, defendant R.L.[1] was convicted of contempt, N.J.S.A. 2C:29-9(b)(2), a disorderly persons offense, for violating a final restraining order (FRO) issued under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  He moved for reconsideration, which was denied.  We reverse, concluding that the contemptuous act – a communication through Our Family Wizard (OFW) – was permitted by the FRO and the parties' parenting time agreement. The act did not, therefore, constitute contempt.

Defendant and R.W. are divorced and have one daughter, L.L.  The parties entered a custody and parenting time agreement, which was annexed to and incorporated into the marital settlement agreement, in February 2015.  The parenting time agreement permitted the parties to "utilize [OFW] as a means of communicating and exchanging information including, but not limited to, requests for exchange/trade of parenting time (and responses thereto)."  OFW is a web-based application that allows parents to coordinate parenting time and custody issues.  As it related to travel, the agreement also provided that "[b]oth parties shall communicate in writing any travel plans they have with the child,

---

[1]  We identify the parties by initials to protect the identity of the victim of domestic violence.  R. 1:38-3(d)(9), (10) and (13).

setting forth flight/train/auto route details and the location of the hotel or residence where the child shall stay overnight, [ten] days prior to the scheduled vacation/travel period."

An FRO was entered against defendant on August 12, 2016. The latest amended FRO was entered on August 1, 2019, which included a provision restraining R.L. from having any form of contact or communication with R.W., except for "non-harassing communication concerning minor child via [OFW]" and permits the parties to "send non-harassing texts in the case of an emergency with minor child only."

This appeal arises from communication between defendant and R.W. regarding the death of R.W.'s father and the attendant travel to the funeral. On November 9, 2021, R.W. told defendant via OFW that she planned to travel to Austin, Texas to attend her father's funeral with their daughter. R.W. also stated, "Thanksgiving [d]etails to be finalized soon and travel details to following in the next OFW message." Two days later, defendant sent three messages expressing his concern that their daughter would be in Texas for one week and would miss an extended period of schooling due to the school's COVID-19 policy. In the first message, sent at 7:49 a.m., defendant expressed his condolences to R.W. and proposed that L.L. "stay in New Jersey," not "miss

3

school" and "make up" parenting time on her return from Texas. Defendant did not consent to L.L. missing three weeks of school and asked R.W. to reconsider her decision. He also asked R.W. to provide the flight information.

In his second message, sent eight minutes later, defendant iterated his request that R.W. not take L.L. out of school from "11/14 – 12/7." He then stated if R.W. proceeded, he "need[ed] make up parenting time for 11/9 – 11/21, and 11/23 6 p[.]m[.] to p[.]m[.], and 11/16 6 p[.]m[.] – 9 p[.]m[.] and 11/15 5 p[.]m[.] – 8 p[.]m[.]." Defendant renewed his request for R.W. to reconsider taking L.L. to Texas.

In his third message, sent at 9:16 a.m., defendant repeated his request that R.W. reconsider because the school's ten-day COVID policy would require her to "stay out of school an additional ten days for a total of twenty days out of school." Further, "as a courtesy," defendant pasted the language that would be set forth in the proposed order to show cause (OSC) that he intended to file if R.W. did not agree to leave their daughter in New Jersey. A copy of a blank OSC was sent to R.W.

R.W. viewed defendant's messages later that day and informed defendant that L.L. could attend virtual classes and refused to change her trip. Despite

4

promising to provide defendant with the travel details, R.W. failed to do so. Defendant filed an emergent application at 3:47 p.m. that afternoon.

On November 12, 2021, the court ordered R.W. to reduce the length of the trip. Following the hearing, R.W. went to the Essex Fells Police Department and filed a domestic violence complaint alleging defendant violated the FRO by "communicating via Family Wizard in a manner that [R.W.] felt was harassment."

A bench trial was conducted on June 20, 2022. The State presented the testimony of R.W., who stated she received the three emails through OFW from defendant concerning R.W.'s trip to Texas with L.L. According to R.W., defendant "threatened [her] multiple times" and "never filed a motion in OFW" before this incident. She also stated the OFW messages did not have a copy of the order to show cause attached.

Defendant testified that although he wanted his daughter to attend her grandfather's funeral, he did not "want her out of the state for ten days for a Saturday funeral" and "two more weeks quarantine." He explained that he asked R.W. to reconsider out of concern for L.L.'s matriculation to the next grade. He admitted to telling R.W. that he would file an OSC if she did not change her travel plans. He then sent R.W. a blank OSC form through OFW. Defendant

5

filed the OSC to shorten the trip at 3:37 p.m. on November 11, explaining that the hearing needed to occur the next day because R.W. intended to leave on November 14.

On July 15, 2022, the trial court issued a written opinion. Assessing the credibility of the parties, the trial court found R.W.'s testimony was "supported" by the OFW messages, whereas defendant was "partially credible." The court found defendant's concerns about L.L.'s ability to matriculate to the next grade to be "disingenuous" because he also testified that she was doing well in school. The court also found defendant's credibility "questionable" because he responded "no" when he was asked if remote learning was available to L.L. Thus, the court concluded R.W. was more credible than defendant.

After hearing the parties' testimony, the trial court found defendant guilty of contempt. In a written opinion, the court reasoned the communications "was not an 'emergency' involving L.L." The court found that the third message on November 11, "threatening litigation if R.W. failed to accede to his demands – constitute[d] a violation of the FRO." The court elaborated:

> Yet, [the third message] expressly threaten[ed] litigation against R.W. if she commenced the anticipated travel with minor child. Even if the initial messages sent by the [d]efendant [was] determined to be permitted under the terms of the FRO, the [c]ourt is hard[-]pressed to conclude that threatening litigation

6

> would find the same refuge from a violation of the FRO.
> Simply put, threatening litigation is not permitted.

The court concluded "beyond a reasonable doubt" that defendant committed contempt of the FRO by sending the third message.

The court also reasoned that the third message constituted harassment. It explained the messages were harassing "because defendant's only purpose . . . was to intimidate R.W. into changing her plans.'" The court explained that it "[could not] overlook the number and timing of the messages sent by [d]efendant." The court concluded, "[r]ather than grant R.W. a reasonable time to respond to his objections, the [d]efendant engaged in what can only be described as a rapid-fire text message assault in an effort to bully R.W. into altering her plans, ultimately under threat of litigation."

Defendant moved for reconsideration. In a written opinion dated September 19, 2022, the court denied defendant's motion, finding the "July 15, 2022 decision was neither palpably incorrect nor based upon an irrational basis." The court determined defendant "still violated the FRO communicating with R.W. since no emergency existed." The court rejected defendant's argument that it neglected to consider evidence that defendant's messages were not harassing and that he had no intent to harass. The court reiterated its finding that the third message threatening litigation "was not only unpermitted by the FRO but

7

unnecessary and harassing." Lastly, the court found defendant's behavior harassing and restated defendant did not allow R.W. to respond before sending the third message "if R.W. did not accede to his demands."

Defendant now appeals contending the trial court committed a series of errors by applying the incorrection section of the FRO, misapplying the law regarding harassment, misapplying the law and ignoring competent, probative evidence, and committing cumulative errors.

Our scope of review of the factual findings of a judge sitting without a jury is limited. State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing State v. Johnson, 42 N.J. 146, 161-62 (1964)). Our review of a trial judge's finding of guilt in a contempt proceeding is limited to determining "whether the record contains sufficient [credible] evidence to support the judge's conclusion." State v. J.T., 294 N.J. Super. 540, 544 (App. Div. 1996) (citing Johnson, 42 N.J. at 161). Moreover, in reviewing a decision of a family court, we "defer to the factual findings of the trial court," N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008), in recognition of its "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (citation omitted).

Because a violation of a restraining order is punishable as a criminal act, a defendant is entitled to the rights of all criminal defendants. We must, therefore, ensure the State has carried its burden of proving the defendant's guilt beyond a reasonable doubt. See N.J.S.A. 2C:1-13(a); State v. Krupinski, 321 N.J. Super. 34, 45 (App. Div. 1999).

To be guilty of the disorderly persons offense of contempt of an FRO under N.J.S.A. 2C:29-9(b)(2), the State must prove beyond a reasonable doubt that defendant was served with the FRO and knowingly committed behavior that violated the FRO. State v. L.C., 283 N.J. Super. 441, 447-48 (App. Div. 1995).

Applying these principles, we conclude there was insufficient credible evidence in the record to support defendant's conviction of contempt of the FRO. The FRO prohibited defendant from contacting R.W. except non-harassing communication through OFW regarding their daughter.

The trial judge mistakenly concluded that defendant violated the FRO when he communicated with R.W. through OFW. Specifically, the last message when he "threatened" to file an OSC regarding L.L.'s anticipated travel to Texas. It is these factual findings that are unsupported in the record.

Contrary to the trial court's findings that focused on only part of the communications provision, the parties were permitted to communicate through

OFW regarding their daughter's health, safety, and wellbeing and were not restricted to purely emergent events.

Even assuming communication was limited to an emergent event, the record is devoid of facts that R.W.'s father's death was not an unanticipated emergent event. Moreover, the record shows multiple requests for R.W. to reconsider her travel plans. Only the third message contained the proposed language for the OSC "if" R.W. did not reconsider her plans. The trial court found defendant did not provide R.W. with sufficient time to respond. The evidence does not support that finding. R.W. twice responded to defendant's messages concerning the school's COVID-19 protocol and remote learning but did not address defendant's request for reconsideration. Thus, the documentary evidence introduced corroborates defendant's account of events.

Additionally, there is no evidence in the record that defendant acted with a purpose to harass R.W. Nor did the State prove defendant engaged in "multiple threats" to R.W. The exchange of messages through OFW does not demonstrate intimidating, let alone harassing, behavior. The trial court's conclusion that defendant violated the FRO because he threatened litigation when R.W. did not capitulate is not sustainable on this record.

The trial court also relied on general credibility findings to conclude defendant intended to violate the FRO. R.W.'s testimony concerning "multiple threats" was not supported by the evidence. The trial court's determination that defendant was "disingenuous" and "questionable" regarding L.L.'s remote learning and its effect on her matriculation was not relevant to a finding of contempt. While credibility findings need not be explicitly enunciated if supported by the record as a whole, Locurto, 157 N.J. at 474, we may intervene if a trial court's credibility evaluation is "undoubtedly mistaken." Lautek Corp. v. Image Bus. Sys. Corp., 276 N.J. Super. 531, 541 (App. Div. 1994).

Given the purpose of the PDVA is to provide maximum protection from abuse, defendant's conduct in this case cannot reasonably be considered as constituting criminal or quasi-criminal conduct that would subject him to the penalties for such conduct. See State v. Wilmouth, 302 N.J. Super. 20, 23 (App. Div. 1997). Based on the record, we are satisfied that the findings made on defendant's intent are fettered by the inaccurate material factual findings. We hold the State's evidence was not adequate to support a finding, beyond a reasonable doubt, that defendant knowingly violated an FRO. See State v. Finamore, 338 N.J. super. 130, 138-9 (App. Div. 2001). Therefore, we reverse defendant's conviction and sentence.

Reversed and remanded for an order vacating the judgment.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION