# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3770-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RICHARD LABINSKI, JR.

     Defendant-Appellant.

_____

          Submitted November 9, 2023 – Decided January 2, 2024

          Before Judges Currier and Susswein.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FO-08-0059-22.

          Law Offices of Andrew N. Yurick, attorneys for appellant (Nicholas J. Yurick, on the briefs).

          Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney for respondent (Michael C. Mellon, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Richard Labinski, Jr. appeals his bench trial conviction for contempt under N.J.S.A. 2C:29-9(b)(2) for violating the no-contact provision in a domestic violence temporary restraining order (TRO). The Family Part judge denied defendant's pretrial motion to dismiss the contempt complaint. After a trial, the judge, sitting as the trier of fact, found the State proved beyond a reasonable doubt that defendant knowingly placed a telephone call to his former wife in violation of the TRO. The judge rejected defendant's contention the call had been made either inadvertently by defendant or by someone else "spoofing"[1] his telephone number. After carefully reviewing the record in light of the trial evidence and arguments of the parties, we affirm.

I.

We briefly recount the procedural history and pertinent facts adduced at trial. On June 30, 2021, defendant's former wife obtained a TRO against him under the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35, alleging defendant had harassed her. The TRO prohibited defendant "from having any oral, written, personal, electronic, or other form of contact or communication with [his former wife.]" On July 2, 2021, defendant's

---

[1] Spoofing is a method by which the caller can make the contact information that appears on the recipient's phone appear to come from another person's phone rather than the caller's phone.

former wife reported she received a call from defendant that she did not answer. Defendant was charged by complaint with knowingly or purposely violating an order entered under the provisions of the PDVA.

Defendant filed a motion to dismiss. The trial judge heard oral argument after which he entered an oral decision denying the motion.

A bench trial was convened over the course of two days in May and July 2022. Defendant's former wife testified that two days after the TRO was entered, she received a call from defendant but chose not to answer it. The State introduced a screenshot of her call log showing the call was from "Rick's Cell," referring to defendant's phone. She testified she did not speak with defendant that day and acknowledged she had no way of knowing whether this call was made accidentally or intentionally.

At the close of the State's case, defendant moved to dismiss the case, arguing the prosecution did not prove a restraining order violation beyond a reasonable doubt. The judge denied the motion, stating, "[s]o for the motion, I'm convinced there are inferences I can take that this is an electronic form of contact."

On the second day of trial, defendant testified in his own defense. He claimed he did not knowingly or purposely contact his former wife. When asked

3

if the call was a pocket dial or a "spoof" call defendant replied, "I don't know, sir."

The defense also presented testimony from a witness qualified as an expert on cell phones. The expert explained the many ways an accidental call can occur: pocket dialing, issues with the voice-activated Siri application, spam calls (spoofing), accidentally hitting someone's name after receiving a voicemail, accidentally calling a designated medical contact, or a "butt dial." The expert acknowledged butt dials are less likely to occur with current technology, as those sorts of calls typically originate with phones with raised buttons. The defendant had an iPhone, which does not have raised buttons. The expert also testified a cracked screen could lead to an accidental call. Defendant had a cracked phone screen on the day of the violation.

After closing arguments, the trial judge found defendant violated the TRO, issuing an oral opinion to explain his decision. The judge rejected the notion the call was a "spoof call," noting it "would be just an absolute, incredible coincidence, to happen once with a—with a fresh restraining order, to just happen to have that phone number chosen by a telemarketer . . . ." The judge also found an accidental Siri call unlikely.

A-3770-21

As for accidentally returning a prior call, the judge noted, "in choosing to testify, I can then expect . . . defendant to perhaps explain away things that might be in question given what is and has not been possibly proved." The judge further stated, "[defendant] had it in his ability to show that likely—what could have happened." As to an accidental call from voicemail access, the judge noted, "[a]gain, defendant could have testified, if that were the case, that he had a voicemail and it was—that he saves voicemails from [his former wife] or had a saved voicemail and this is an example of something that could have happened." As to the butt dial theory, the judge was "skeptical of a traditional butt dial from the beginning for the reasons the expert talked about." Lastly, the judge saw no basis in the theory that someone else interacted with defendant's phone and placed the call.

The judge noted:

> Now, it's not [defendant's] burden to show that somebody else took [defendant's] phone or he was not in possession of his phone at a particular time on a particular day. It's not his burden. And I—but I don't . . . see that I have to require the State to prove that [defendant] was in sole possession and control of his phone at a specific time on a specific day to conclude beyond a reasonable doubt that a phone call initiated from that device was initiated by . . . defendant. No one can ever say with absolute certainty that . . . defendant placed this call. That's not the burden.

The judge concluded,

> I find beyond a reasonable doubt he did initiate the call at a time when the victim was protected by the terms of a restraining order and, therefore—and I find he did so intentionally. I don't find convincing that the ways one could initiate a call accidentally make any sense under the circumstances of this case. So I find that he did so knowingly . . . and purposely. So I do find in favor of the State that . . . defendant did commit contempt.

Defendant was issued a fine, ordered to submit a DNA sample, and banned from possessing a firearm. On July 8, 2022, defendant filed a motion for reconsideration which the trial court denied on August 1, 2022.

Defendant raises the following contentions for our consideration:

POINT I

THE TRIAL COURT ERRED IN MISAPPLYING AND/OR SHIFTING THE BURDEN ONTO THE DEFENDANT TO PROVE HIS INNOCENCE RATHER THAN REQUIRING THE STATE TO MEET ITS BURDEN BEYOND A REASONABLE DOUBT.

POINT II

THE TESTIMONY AND EVIDENCE PRODUCED AT TRIAL DO NOT MEET THE NECESSARY PROOFS REQUIRED TO SUSTAIN A GUILTY VERDICT IN THIS MATTER.

6

I. THE PROOFS SUBMITTED DO NOT SUPPORT A FINDING OF A KNOWING VIOLATION OF THE TEMPORARY RESTRAINING ORDER.

II. THE PROOFS SUBMITTED DO NOT SUPPORT A FINDING THAT THE DEFENDANT HAD CONTACT OR COMMUNICATION WITH HIS FORMER WIFE IN VIOLATION OF A TEMPORARY RESTRAINING ORDER.

POINT III

THE TRIAL JUDGE MISAPPLIED THE LAW WHEN THE COURT DETERMINED THERE WAS NO DE MINIMIS EXCEPTION TO THE CONTEMPT STATUTE.

POINT IV

THE TRIAL JUDGE MISAPPLIED THE LAW WHEN THE COURT DETERMINED THAT A TIMELY FILED MOTION FOR RECONSIDERATION WAS IMPROPERLY BROUGHT.

II.

We first address defendant's contention that "[t]he trial judge misapplied the law when the court determined there was no de minimis exception to the contempt statute." At trial, the judge stated, "[t]hat is implicit or presumed, that a victim of domestic violence is entitled not to hear from a defendant in any way, shape or form. There's no de minimis exception." The trial judge amplified

7

the latter statement, noting, "I'm not sure how I can find a de minimis exception when it's not in the statute or any case law that I am familiar with. Had there been a de minimis provision, I might have considered it in this case, but there's not."

There is, in fact, a de minimis provision in the New Jersey Code of Criminal Justice (penal code), N.J.S.A. 2C:1-1 to -104-9, which is codified in N.J.S.A. 2C:2-11. That provision reads:

> The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> a. Was within a customary license or tolerance, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> b. Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> c. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense. The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.

A-3770-21

This penal code section refers to "prosecution" and "offense" without limitation, indicating by its plain text that no criminal offense[2] is categorically ineligible for dismissal as a de minimis infraction. The case law makes clear, moreover, this feature can apply to domestic violence-related charges. In State v. Hoffman, 149 N.J. 564 (1997), for example, our Supreme Court stated, "[w]e recognize that in the area of domestic violence, as in some other areas in our law, some people may attempt to use the process as a sword rather than as a shield." Id. at 586. The Court added, "[t]he Legislature has established a self-regulating provision in the Code [referring to N.J.S.A. 2C:2-11] that can be used to protect against frivolous prosecutions under the [PDVA]." Ibid. The Court added, "[o]ur courts have not hesitated to use that statute to terminate a potential prosecution when the charge has been trivial or the prosecution would have been absurd." Id. at 587 (citing State v. Brown, 188 N.J. Super. 656, 671 (Law Div. 1983)).

Because the trial judge did not consider whether the domestic violence disorderly persons contempt charge should be dismissed pursuant to N.J.S.A. 2C:11-2, we review the issue de novo. "[A] judge's purely legal decisions are

---

[2] The term "offense" as used in the penal code includes "a crime, a disorderly persons offense or a petty disorderly persons offense . . . ." N.J.S.A. 2C:1-14(k).

subject to our de novo review." C.C. v. J.A.H., 463 N.J. Super. 419, 428-29 (App. Div. 2020). We begin by recognizing this penal code provision does not create an affirmative defense to be considered by a jury, or by a judge sitting as the trier of fact in a non-jury trial for a disorderly persons offense. Cf. N.J.S.A. 2C:2-5 (explaining defenses generally); cf. N.J.S.A. 2C:1-13(c) (defining an "affirmative defense"). Rather, this statutory provision authorizes an application to be made to the assignment judge[3] to dismiss the prosecution.

Even putting aside any procedural deficiencies with respect to defendant's de minimis application, we conclude the contempt charge should not have been dismissed as a de minimis infraction. The violation was not de minimis for purposes of N.J.S.A. 2C:2-11 merely because only a single phone call was placed. There need not be a pattern of violations to warrant prosecution for contempt of a domestic violence TRO. The no-contact provision in the order was clear and unambiguous in precluding any contact. Furthermore, the TRO expressly proscribed contact, not just communication. The latter term implies conversation or conveyance of information such as by leaving a voicemail message. One of the purposes of a no-contact order is to protect domestic

---

[3] The record in this case does not indicate the application was made to the assignment judge or delegated by the assignment judge to the trial judge. We nonetheless consider defendant's de minimis contention on its merits.

violence victims from any attempt by defendants to exercise the kind of control that is common in domestic violence situations. See Cesare v. Cesare, 154 N.J. 394, 397-98 (1998); see also Hoffman, 149 N.J. at 584 ("[T]he [PDVA] effectuates the notion that the victim of domestic violence is entitled to be left alone.").

The contempt statute addresses conduct that is specifically prohibited by a duly issued and served court order.[4] Because the TRO instructed defendant he could have no contact with his former wife, the contempt offense was committed upon his knowingly or purposely making any call to her. The single call was sufficient to support a prosecution.

Nor is the unlawful conduct rendered de minimis because the victim did not answer the call. We reiterate the contempt offense was complete when defendant placed the call. He had no way of knowing whether the victim would accept it. The contempt offense does not require any action by the victim. And as we have noted, the TRO prohibited contact, not just communication. Accordingly, the offense was not rendered de minimis merely because the victim chose to avoid engaging in communication by not answering the call.

---

[4] Defendant does not dispute he was served with the TRO.

A-3770-21

The cases defendant relies upon are readily distinguishable, and in fact show why the present matter does not fall under the rubric of N.J.S.A. 2C:2-11. In State v. Wilmouth, for example, the PDVA restraining order likewise "prohibited defendant 'from having any (oral, written, personal or other) form of contact or communication with' [the victim]." 302 N.J. Super. 20, 21 (App. Div. 1997). However, the defendant in that case had 'liberal and reasonable' visitation with the child he shared with the victim. Ibid. Although the order specified visitation was to be arranged between the victim and the defendant's mother, the defendant and victim chose to schedule visitation of the child by calling each other. Ibid. The record further showed the victim regularly initiated communication with the defendant. Id. at 22.

On one occasion, the defendant had the child with him at his parents' home when the victim arrived to pick up the child. Ibid. The victim was accompanied by a police officer. Ibid. The defendant said to the victim, "[a]m I going to get to see [the child] tomorrow?" Ibid. We held the face-to-face question the defendant asked the victim did not constitute contempt of the restraining order, which "was thereafter amended to permit communication between defendant and [the victim] respecting visitation." Ibid. "We reach this conclusion," the court explained, "because [the victim] herself had construed the order as in no way

12

interdicting direct communication between her and defendant regarding visitation." Ibid. Further, "[i]t was she who had regularly initiated such communications and she who had regularly requested defendant's cooperation . . . . " Ibid. We thus determined "this was a trivial, non-actionable event . . . . " Id. at 23. The facts in the matter before us are starkly different. Here, the victim made no efforts to contact the defendant or relax the no contact order.

Defendant also cites State v. Krupinksi to support his contention that his violation was too trivial for prosecution. 321 N.J. Super. 34, 37 (App. Div. 1999). In that case, the defendant likewise was "prohibited from having any (oral, written, personal or other) form of contact or communication with [the] victim." Id. at 38. When dropping the children off from visitation, the defendant told the victim he was there to pick up the lawnmower. Id. at 40-41. The pendente lite order required the defendant to repair the lawn mower. It did not specifically prohibit the defendant from entry upon the property occupied by his wife. Id. at 44.

On those facts, we held:

> [The] [d]efendant's conduct in returning the children to the front door, in returning a car seat to his wife, and in requesting the lawn mower in an effort to comply with the pendente lite order, if a violation at all,

13

> cumulatively was nevertheless a "trivial, non-actionable event," <u>unless specifically proscribed by a prior court order</u>.
>
> [<u>Id.</u> at 45 (quoting <u>Wilmouth</u>, 302 N.J. Super. at 23) (emphasis added).]

We added, "the [PDVA] may not be construed in a manner that precludes otherwise reasonable conduct unless the orders issued pursuant to the Act specifically proscribe particular conduct by a restrained spouse." <u>Ibid.</u>

Contrary to defendant's interpretation, we read <u>Krupinksi</u> to stand for the proposition that a contempt violation is <u>not</u> trivial within the meaning of the de minimis provision when the charged contempt conduct is clearly prohibited by a domestic violence restraining order and is not associated with conduct that is not clearly prohibited by the order. Here, in stark contrast to <u>Krupinski</u>, there was no basis to justify <u>any</u> contact between defendant and the victim.

In sum, although the de minimis provision can apply in cases involving violations of restraining orders, we conclude it does not apply in this instance where the contempt charge alleged conduct that clearly violated an unambiguous no-contact order. There were no extenuating circumstances to justify placing a phone call. The fact it is possible to conceive far more serious violations does not render the present prosecution absurd, to use the <u>Hoffman</u> Court's characterization. 149 N.J. at 587. As we have noted, our Supreme Court

14

stressed in <u>Hoffman</u>, "the [PDVA] effectuates the notion that the victim of domestic violence is entitled to be left alone." <u>Id.</u> at 584. The phone call here, coming just two days after the TRO was entered, struck at the heart of that notion. Accordingly, defendant was obliged to contest the contempt charge on its merits at trial, putting the State to its proofs applying the beyond-a-reasonable-doubt standard. Defendant was not entitled to have it dismissed before trial as a de minimis infraction.

## III.

We next turn to defendant's contention "[t]he trial court erred in misapplying and/or shifting the burden onto the defendant to prove his innocence rather than requiring the State to meet its burden beyond a reasonable doubt." One of the most central tenets of our criminal justice system is "[i]n a criminal prosecution, the State bears the burden of proving beyond a reasonable doubt every element of an offense." <u>State v. Medina</u>, 147 N.J. 43, 49 (1996). "[T]he presumption of innocence and the State's beyond-a-reasonable-doubt proof requirement work hand-in-hand to protect an accused and force the State to satisfy the proof requirements for a conviction." <u>State v. Hill</u>, 199 N.J. 545, 559 (2009).

As a corollary to the State's burden of proof, "[t]he defendant is not obligated to present any witnesses or to testify himself to establish his [or her] defense." State v. Francisco, 471 N.J. Super. 386, 421 (App. Div. 2022). But when a defendant chooses to put on a defense, the trier of fact is permitted to scrutinize it like any other evidence. Just as a prosecutor in closing argument may critique defense evidence as "fair comment," id. at 421-22, when a judge sits as the trier of fact, they may point out flaws and deficiencies in the defense case when explaining their findings and conclusions that led to a guilty verdict. And of course, when defendants elect to testify in their own defense, they place their credibility at issue before the trier of fact.

In this instance, the judge methodically evaluated the defense theories and evidence. He rejected the idea that the phone call was a "spoofing" situation, stating "that's just not believable in any way." The judge further found a "butt dial" was unlikely because the phone did not have raised buttons.

As for the other theories of an accidental call, the judge was left with a gap in information due to defendant's limited testimony. The defense arguments involved speculation that the judge was free to reject.

Just because the judge did not agree with defendant's theories does not mean he improperly shifted the burden onto defendant. Indeed, the judge's

16

comments confirm he understood full well that the burden rested on the prosecution to prove the elements of the charged crime—including the knowing or purposeful mental culpable state—beyond a reasonable doubt. The judge stated, for example, "[n]ow, it's not [defendant's] burden to show that somebody else took his phone or he was not in possession of his phone at a particular time on a particular day. It's not his burden." The judge stated further, "but I don't— I don't see that I have to require the State to prove that he was in sole possession and control of his phone at a specific time on a specific day to conclude beyond a reasonable doubt that a phone call initiated from that device was initiated by the defendant."

The judge concluded:

> So I find beyond a reasonable doubt he did initiate the call at a time when the victim was protected by the terms of a restraining order and, therefore—and I find he did so intentionally. I don't find convincing that the ways one could initiate a call accidentally make any sense under the circumstances of this case. So I find that he did so knowingly and person—and purposely. So I do find in favor of the State that the defendant did commit contempt.

In sum, the judge carefully and critically reviewed the evidence and drew reasonable inferences from the evidence. We are satisfied the judge reached a verdict without shifting the burden of proof from the State to defendant.

17

IV.

We next address defendant's closely related contention the State failed to meet its burden of proving the contempt charge beyond a reasonable doubt. Appellate courts apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 594-95 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). In an appeal from a non-jury trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). The law is especially clear that deference is given to a trial court's credibility findings. State v. Hubbard, 222 N.J 249, 264 (2015). "Appellate courts owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

N.J.S.A. 2C:29-9(b)(2) prohibits a person from "purposely or knowingly violat[ing] an order entered under the provisions of the [PDVA]. . . ." Defendant argues "one, unanswered phone call, without any voicemail or message left for the alleged victim, does not constitute a communication or contact under the temporary restraining order." We disagree. The TRO entered against defendant expressly and unambiguously prohibited him from "having any oral, written, personal, electronic, or other form of contact or communication with [his former wife.]" (emphasis in original). For reasons we have already explained in our discussion of defendant's de minimis argument, we are satisfied the call was a form of contact.

We likewise reject defendant's contention "[t]he proofs submitted do not support a finding of a knowing violation of the temporary restraining order." As our Supreme Court explained in State v. Williams, "[i]t is well known that mental state is not conducive to demonstration through direct evidence." 190 N.J. 114, 124 (2007). "In criminal prosecutions, proof of a defendant's mental state often must be 'inferred from the circumstances. . . .'" Ibid. In this instance, the trial judge acted within his authority as trier of fact in rejecting the defense argument the call was placed inadvertently and in inferring defendant intentionally called the victim.

A-3770-21

V.

Finally, we address defendant's contention the trial judge erred in denying his motion for reconsideration. In a concise written order, the trial judge ruled:

> 1. The [c]ourt finds that this matter was improperly brought before this [c]ourt by way of Motion for Reconsideration;
>
> 2. The [c]ourt takes no action with respect to the Judgment entered on July 1, 2022, and has expedited the entry of this Order in light of the running time within which to file an appeal; and
>
> 3. The [c]ourt amplifies its decision by noting that the State proved all elements of the offense beyond a reasonable doubt.

Even accepting for the sake of argument that a motion for reconsideration—as distinct from a motion for a new trial or to vacate the judgment pursuant to Rule 3:20-1[5]—was appropriate following a bench trial

---

[5] Rule 3:20-1 provides:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. If trial was by the judge without a jury, the judge may, on defendant's motion for a new trial, vacate the judgment if entered, take additional testimony and direct the entry of a new judgment.

20

verdict in this quasi-criminal matter, we are convinced there was no basis for the trial judge to reconsider much less overturn his guilty verdict.

The appellate "standard of review on a motion for reconsideration is deferential." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023). Reconsideration is only appropriate in "that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Triffin v. SHS Group, LLC, 466 N.J. Super. 460, 466 (App. Div. 2021) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).

Defendant may disagree with the trial judge's findings and maintain his innocence, but that is not a basis for appellate intervention. The trial judge carefully considered the evidence offered by both parties and reached his conclusion applying the proof-beyond-a-reasonable-doubt standard.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3770-21